# EXHIBIT "1"

Rule 56(f) Declaration of
Mark S. Zaid, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GARY BERNSTEN | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 05-1482 (CKK) |
| | * | |
| CENTRAL INTELLIGENCE AGENCY | * | |
| | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>RULE 56(f) DECLARATION OF MARK S. ZAID, ESQ.</u>**

The undersigned hereby declares as follows:

1. I am a person over eighteen (18) years of age and competent to testify. I make this Declaration on personal knowledge. This Declaration is submitted in support of the plaintiff's Opposition to Defendant's Motion for Summary Judgment and pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

2. I am the attorney for the plaintiff Gary Bernsten ("Bernsten") in this matter. I am admitted to practice law in the States of New York, Connecticut and the District of Columbia, as well as the D.C. Circuit, Second Circuit and Fourth Circuit Court of Appeals, and the United States District Courts for the District of Columbia, Maryland, Eastern District of New York, Northern District of New York and the Southern District of New York. I have been litigating cases involving the federal government for more than a decade. I routinely prosecute lawsuits asserting challenges under the Freedom of Information Act, 5 U.S.C. § 552 (particularly with respect to Exemption One), and Privacy Act, 5 U.S.C. § 552a, and actively represent individuals associated with or within the intelligence, law enforcement or military communities. It is safe to say that I have handled more prepublication review challenges (both administrative and litigation) during the last ten years than anyone in the history of the process. Since 1998, I have also served as the Executive Director of The James Madison Project

(*www.jamesmadisonproject.org*), which seeks to educate the public on secrecy and national security issues.

3. With respect to this case, I have not had access to either the underlying unredacted manuscript, Bernsten's substantive classification submission (discussed further below) or the CIA's "classified" declarations. As a factual matter, I have little to no idea what is at issue.

### CIA's Classification Review Process

4. Based on the requirements imposed by a variety of secrecy agreements, current and former CIA employees, as well as contractors and private attorneys such as myself, may be required to submit certain writings to the CIA in order that a classification review may be conducted to determine whether any or all of the contents of the document are classified. In this particular case I am not subject to any such obligation as I have not executed a secrecy agreement. However, I did voluntarily agree to submit this specific filing to the CIA for review as a courtesy. Bernsten, as a former CIA employee, is required to submit substantive documents to the CIA for review.

5. The CIA has assured me in the past that no individuals functioning as attorneys for the CIA are provided access to the documents while under review. This would specifically, and most importantly, apply to the attorneys within the Office of General Counsel that are handling any litigation surrounding the submission. It is also my understanding that the document is not shared with the attorneys at the Department of Justice. Any involved Government attorneys would gain access to the document(s) when they are filed with the Court as with any other filing.

### Bernsten's Submission

6. Bernsten was instructed by counsel to prepare a rebuttal to the CIA's classification decisions that asserted portions of his book <u>Jawbreaker, The Attack on Bin Laden and Al-Qaeda: A Personal Account by the CIA's Key Field Commander</u> (Crown Publishers: 2005) contained classified information. The document should include detailed

specific rebuttals to the CIA's positions, and especially cite to and compare open sources, such as former CIA official Gary Schroen's book <u>First In: An Insider's Account of How the CIA Spearheaded the War on Terror in Afghanistan</u> (Presido Press: 2005), that contain identical language to that which is redacted from <u>Jawbreaker</u>. This document constituted attorney-work product as it was prepared by Bernsten for his counsel to assist in this legal challenge. It additionally constitutes an attorney-client communication as it was to be provided by Bernsten, as the client, to his counsel.

    7. The CIA would not permit Bernsten to provide a copy of this document to me, at least not before it underwent a classification review, on the basis that I have no "need-to-know" its contents. The fact that Roy Krieger, who was previously acting as Bernsten's counsel, had signed a secrecy agreement and that I was willing to do so was irrelevant to the CIA. The CIA does not wish to allow any exchange of information between client and counsel that would assist either in challenging its determinations. In that vein it is quite noteworthy to quote the Honorable Emmet G. Sullivan's admonition to the CIA in <u>Stillman v. DoD et al</u>. that the manner in which it was conducting its prepublication review process "smacks of retaliation for the assertion of First Amendment rights."

    8. Based on the CIA's position, I arranged for Bernsten to submit his document to the CIA for a classification review. This would have conceivably allowed me to at least utilize and rely upon any remaining unredacted portions of the document in drafting Bernsten's opposition brief. In or about late August/early September 2006, I had Bernsten contact my CIA security officer, Thomas Schmittle, and receive instructions on how to submit his documentation. The CIA acknowledged receiving the document no later than September 12, 2006. On several occasions I notified my CIA security officer that I would need Bernsten's document returned to me with sufficient time to be able to draft his opposition brief.

    9. On September 20, 2006, I received a letter from the Justice Department counsel currently handling this case indicating that it was "highly unlikely" I would be provided

with a copy of Bernsten's document. See Exhibit "A". As of the date of this declaration, I still have not received a copy. Thus, I have little to no idea what is contained within Bernsten's submission. The letter I received also noted that the Justice Department was willing to assist in arranging for this Court's *in camera* review of an unredacted copy of the document as part of its deliberations.

    10. This Court must assuredly review Bernsten's document in order to render a constitutionally sufficient opinion as to whether the CIA has properly classified the contents of Bernsten's book. However, in my professional opinion, neither the attorneys for the Justice Department nor the CIA have any "need-to-know" the contents of Bernsten's document. There is no rational basis as to how their need to review that document could outweigh my own as part of this litigation challenge process. More importantly, that document is clearly privileged. Neither Bernsten nor I have authorized its release or waived the privilege. We have only complied with a legal requirement to submit the document to security officials within the CIA. My willingness to comply with this process is based largely on the assurance that I have been provided by the CIA that none of the litigation attorneys are involved in the review process or provided a copy of my pending documents until I file them with the Court.

    11. On September 25, 2006, I notified the Justice Department of our above position in order to make proper arrangements for Bernsten's document to be provided to the Court's security officers. See Exhibit "B".

## CIA's Publication Review Board

12. Bernsten's manuscript, as well as the most recent substantive document that he drafted at my request, were submitted to the CIA's Publication Review Board ("PRB") for classification review. In general, the PRB arranges for submitted documents to be reviewed by relevant persons or CIA components. Although CIA regulations grant the PRB and its Chairman absolute authority to release information as unclassified, it has become clear that the PRB is not calling the shots with respect to controversial

4

publications such as Bernsten's <u>Jawbreaker</u>. The PRB, both through its Chairman and other staff, routinely inform either myself or my clients, that the redactions they are being required to make are absurd. Yet the PRB nevertheless capitulates to whichever CIA component is apparently calling the shots behind the scenes.

13. This back door dealing and arm twisting became so bad that it is my understanding that the last PRB Chairman left his position because of it, and the current PRB Chairman apparently seeks to spend a great deal of time away from his office as a result as well.

### CIA Reclassification Of Information

14. On September 22, 2006, I inquired of the Director, William Leonard, Information Oversight Security Office ("ISOO"), National Archives & Records Administration, as to whether the CIA had communicated with ISOO regarding either Bernsten's or Gary Schroen's books and the classification decisions. ISOO "is responsible to the President for policy and oversight of the Government-wide security classification system and the National Industrial Security Program." It is the lead agency in the federal government that develops "security classification policies for classifying, declassifying and safeguarding national security information generated in Government and industry." See *http://www.archives.gov/isoo/*.

15. Mr. Leonard responded via e-mail on September 25, 2006 that he had "not received any such formal notification" from the CIA.

16. Executive Order 12958, as amended by Executive Order 13292, "prescribes a uniform system for classifying, safeguarding, and declassifying national security information, including information relating to defense against transnational terrorism." *http://www.fas.org/sgp/bush/eoamend.html*. Section 1.7 (c) governs the specific requirements where information may be reclassified after declassification. They include when:

5

(1) the reclassification action is taken under the personal authority of the agency head or deputy agency head, who determines in writing that the reclassification of the information is necessary in the interest of the national security;
(2) the information may be reasonably recovered; and
(3) the reclassification action is reported promptly to the Director of the Information Security Oversight Office.

17. The CIA did not abide by these requirements in reclassifying as classified any previously approved unclassified text that exists within Bernsten's manuscript.

### Discovery Is Appropriate And Necessary To Further Challenge The Bad Faith Underlying The CIA's Classification Decisions

18. In support of its position the CIA has submitted the typical public declaration from Marilyn A. Dorn, Information Review Officer, that purports to set forth the CIA's basis for declaring the redacted information within Bernsten's manuscript as classified. I, of course, have not had access to Ms. Dorn's classified declaration. The Dorn declaration, as well as other incidents noted below, justify the need to allow discovery before granting the CIA's Motion for Summary Judgment.

19. For one thing, Bernsten has submitted a sworn declaration producing prima facie evidence of bad faith on the part of the CIA with respect to its classification decisions. He stated:

> 8. With all of this as background, then CIA Executive Director Kyle (Dusty) Foggo asked for me and an aide to CIA Director Goss to dine together at the Capital Grille. The purpose of the dinner was to discuss my desired retirement and persuade me not to resign. During the course of the evening I explained my reasons for wanted to depart. Mr. Foggo expressed his desire to fix the personnel system at CIA and offered to place me at a University through the officer in residence program. I explained that I had submitted an outside activity form regarding my intention to write a book on the Afghan War. Mr. Foggo stated that Director Goss wanted no more books published by current or former CIA officials.
>
> 9. Mr. Foggo stated "we will have no more books. I will redact the shit out of your book so no one will want to read it." Upon hearing this statement I argued that multiple former Directors and hundreds of other officers had written books and that I was more than willing to follow the

6

>rules to accomplish this. In fact, I added that Gary Schroen had recently had published his book <u>First In: An Insider's Account of How the CIA Spearheaded the War on Terror in Afghanistan</u> (Presido Press: 2005), wherein he dedicated several chapters to me calling me "Gary 2". Mr. Foggo responded "don't bother leaving to write a book I will have it redacted until nothing is left."

20. If comments such as these, especially when coming from the third-ranking person at CIA, does not constitute possible "bad faith", then I do not know what the term could mean. In fact, the PRB, after its review of Bernsten's book, only sought to redact a total of five pages of information. Yet after the manuscript was sent to the CIA's Directorate of Operations, which was under Mr. Foggo's direct control, all of a sudden approximately seventy pages were designated as classified. Bernsten should be permitted to explore through discovery the extent to which, if any, Mr. Foggo had on his review process before the Court considers granting the CIA's Motion.

21. It would also make a great deal of sense, before summary judgment is granted, to allow the deposition of the current and previous PRB Chairmen (Richard Puhl and Paul Noel Chretien, respectively), both of whom actually worked on or had familiarity with the manuscript review of Bernsten's book. Nowhere within the CIA's PRB regulations is there a reference to Ms. Dorn's position. She is the classification litigation voice, and it is my understanding her opinion differs significantly from that of the PRB. Yet it is the PRB's Chairman whose opinion should be the most important in this process, and it is they (both the current and former Chairs) who can elaborate upon the reality, both factually and legally, of the PRB classification review process, not Ms. Dorn.

22. Another legitimate avenue for discovery is the extent to which the CIA officially sanctioned the release of information to the public yet continues to declare the same information classified in Bernsten's book. Bernsten asserts that Gary Schroen

7

intentionally revealed information to at least two authors, Bob Woodward and Steve Coll, both of whom then wrote books that discussed Afghanistan, as part of his official CIA duties, i.e., the information was declassified. Schroen then went on to include the information in his own book. George Tenet, then the Director of the CIA, also declassified relevant information as part of interviews he provided to Woodward, among others. Yet again this same information has been redacted from Bernsten's book as "classified".

I do solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge.

Date: September 25, 2006

/s/
_____
Mark S. Zaid, Esq.
Attorney for Plaintiff Gary Bernsten

# EXHIBIT "A"

Case 1:05-cv-01482-CKK   Document 30-2   Filed 10/02/2006   Page 10 of 15

**U.S. Department of Justice**

Civil Division

20 Massachusetts Ave. N.W.
Room 7110

---

elayton:VMG

*Washington, D.C. 20530*

Tel:  202-514-3183
Fax: 202-616-8470

September 20, 2006

<u>VIA FACSIMILE, FIRST-CLASS MAIL, AND E-MAIL</u>
Mark S. Zaid, Esq.
Mark S. Zaid, P.C.
1920 N Street, N.W., Suite 300
Washington, D.C. 20036

    Re:    <u>Bernsten v. Central Intelligence Agency</u>, Civil Action No. 05CV01342 (D.D.C.)

Dear Mark:

    Pursuant to the Court's Order of August 2, 2006, plaintiff's response to defendants' motion for summary judgment must be filed by no later than October 2, 2006. In addition, you had agreed to submit your brief to the CIA security office for their review by yesterday, September 18, 2006. You called last week to let the CIA know that your brief will be filed by October 2, 2006 but that you would likely not meet the September 18, 2006 deadline for submission to the agency for review. You represented, however, that you would work out the timing of that submission with Security Officer Thomas Schmittle.

    Since your telephone call to me last week, I have learned from the CIA that Mr. Bernsten has submitted to Mr. Schmittle for review a document that he seeks permission to share with you for use in preparing your brief. I am writing to advise you that I have been informed by the CIA that it is highly unlikely that such permission will be granted given the extent of the classified information contained in the document submitted. Therefore, to the extent that the anticipated delay in submitting your brief to the CIA for review, which you described to me last week, may be due to your waiting to receive permission to access that submitted document, I wanted to make sure that you knew the status of the CIA's review of that document as soon as possible. Given that the Order of August 2, 2006, which granted plaintiff's motion for *nunc pro tunc* extension of time, specifies that no further extensions will be granted, I trust that you will not only file your brief by October 2, but also plan to submit your brief for review sufficiently far in advance of that date to provide the defendant agency with the opportunity to conduct an appropriate review.

-2-

Given the likelihood that your client will not be able to share with you the document he recently submitted to the CIA for review, we would like to offer your client assistance in filing this document *in camera* for the Court's review. As you are aware, Mr. Bernsten is subject to Secrecy/Non-Disclosure Agreements that preclude him from disclosing to you or the public any statements that may touch upon classified information prior to classification review and declassification, where appropriate, by the government. Those agreements cover any declarations or other material that he may wish to file. Given the upcoming deadline for filing plaintiff's response, we would like to give you the option of suggesting to Mr. Bernsten that he send his document (through classified means) to me through the Department of Justice's Security Office just as the Department of Justice proposed in the *Stillman v. Central Intelligence Agency* case. DOJ will then ensure that Mr. Bernsten's submissions are filed with the Court *in camera*. Should Mr. Bernsten choose to do this, he must send his submission double wrapped via Federal Express to the following address:

> Elisabeth Layton
> Federal Programs Branch
> c/o Michael Macisso and
> Christine Gunning
> Supervisory Security Specialist
> Litigation Security Group
> Department of Justice
> 20 Massachusetts Ave.
> Room 5300
> Washington, D.C. 20001
> (202) 514-9016

To ensure timely filing, we would need to receive Mr. Bernsten's submissions no later than noon on October 2, 2006. In the event your client does not wish to accept the Government's offer to assist him in filing *in camera*, please let us know no later than close of business on Friday, September 22, 2006, so that the CIA can provide Mr. Bernsten with a formal response to his submission if necessary. I will continue to be your point of contact on this case between now and October 10, 2006, when Steven Bressler is expected to return from leave.

Sincerely yours,

Elisabeth Layton
Trial Attorney
Federal Programs Branch

cc: Michael Macisso
    Christine Gunning

# EXHIBIT "B"

# MARK S. ZAID, P.C.
Attorney-At-Law

1920 N STREET, N.W.
SUITE 300
WASHINGTON, DC 20036
_____

TELEPHONE (202) 454-2809
FACSIMILE (202) 293-4827

MARK S. ZAID, ESQ.
WRITER'S DIRECT DIAL: (202) 454-2809
EMAIL: ZaidMS@aol.com

September 25, 2006

<u>VIA FACSIMILE AND E-MAIL</u>

Elisabeth Layton
Trial Attorney
Federal Programs Branch
U.S. Department of Justice
Civil Division
20 Massachusetts Avenue, N.W., Room 7110
Washington, D.C. 20001

Re: <u>Bernsten v. CIA</u>, Civil Action No. 05-1342 (D.D.C.)(CKK)

Dear Ms. Layton:

    I am in receipt of your letter dated September 20, 2006.

    Please be advised that I have notified the CIA via my security officer, Thomas Schmittle, both through e-mail and voicemail, that my Opposition brief in the above matter is available for pick-up tomorrow, Tuesday, September 26, 2006. Based on the CIA's failure/refusal to provide me with a copy of Mr. Bernsten's submissions I cannot imagine there is anything of a classified nature in my documents, particularly as they merely address legal issues and unrelated factual matters for which I have had no classified access.

    Prior submissions of this nature (and I am taking into consideration the length of my documentation) have recently and routinely been reviewed by the CIA in one day or less. In any event, all I need is for the CIA to provide me its response by the afternoon of Monday, October 2, 2006, so that I may file it sometime by the end of that calendar day. Please note I will be out of the office due to the Yom Kippur holiday so I will need to be notified via cell phone or e-mail, both of which Mr. Schmittle possesses.

    With respect to your proposal regarding the filing of Mr. Bernsten's document with the Court for an *in camera* submission, I appreciate the Department's willingness to cooperate in this regard. First, you may notify the CIA that it can respond to Mr. Bernsten at its convenience regarding his submission when the review has been completed. Due to the CIA's position that it is unavailable for my review, I do not plan to address the specific substance of that document in my filing.

Page 2
Elisabeth Layton
Re: <u>Bernsten v. CIA</u>, Civil Action No. 05-1342 (D.D.C.)(CKK)
September 25, 2006

    However, I do intend for an unredacted copy of the document to be provided to the Court for *in camera*, *ex parte* consideration. Most importantly, in its present draft form Bernsten's document is privileged based on the attorney-client and/or attorney-work product. Neither Bernsten nor myself have waived the privilege or authorized any attorney within the CIA or Justice Department to have access to the document. I have previously been provided with explicit assurances from the CIA that during the classification review process no sharing with or access to my documents by attorneys is permitted.

    Nor does, in my opinion, Government counsel possess any "need-to-know" the contents of Bernsten's document, especially since it considers his opinions "unnecessary and irrelevant." Moreover, generically speaking, your "need-to-know" is certainly no greater than mine in seeing the same document. And if it is classified, I see very little reason why the CIA would desire to enhance the risk of inadvertent disclosure by sharing it even further with your office.

    With all due respect, I decide what is filed with the Court on behalf of my client, not the Government. I, at least initially, also decide whether to seek to protect a document based on an asserted privilege, and I am exercising that right. Of course, the Government is more than free to seek relief from the Court and assert its' counsel should be granted access to my client's document.

    That being said, under the present circumstances I am certainly more than willing to cooperate with the Government to ensure the proper security protections are taken in order to facilitate the document's direct submission with the Court. Counsel for the Government understandably cannot be involved at this stage in order to protect the integrity of the submission. Therefore, please provide me with specific instructions as to how the Department's Security Officer wishes to proceed. Should the Department be unwilling to facilitate this filing, we should plan on having a conversation with the Judge or her law clerk later this week.

    In closing, I respectfully request that you please confirm that neither your office nor any CIA attorneys have reviewed Mr. Bernsten's document. I additionally respectfully request that you instruct the CIA that no dissemination or review of the document, outside of the security classification review process, is allowed to occur – at least until the Court rules otherwise on any such request by your Office.

    Your cooperation is appreciated.

                                                                 Sincerely,

                                                                   /s/

                                                           Mark S. Zaid

cc: Gary Bernsten