# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
GARY BERNTSEN,                  )
                                )
                Plaintiff,      )
                                )
        v.                      )    Civil Action No. 1:05cv01482-CKK
                                )
THE CENTRAL                     )
INTELLIGENCE AGENCY,            )
                                )
                Defendant.      )
_____)
```

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Plaintiff Gary Berntsen, a former covert employee of defendant the Central Intelligence Agency ("CIA"), has asked this Court to find that the CIA violated his First Amendment rights when, in its prepublication review process, the CIA determined that certain information in plaintiff's draft manuscript is classified and therefore cannot be published. As plaintiff admits, see Pl. Mem. 16, he has no First Amendment right to publish classified information. He is also subject to a secrecy agreement that explicitly prohibits him from disclosing classified information and commits him to the CIA's prepublication review process. In the CIA's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, as well as the clear and detailed classified and unclassified declarations of Marilyn A. Dorn filed therewith, defendant has established that the portions of plaintiff's manuscript the CIA redacted are properly classified

under the governing authority, Executive Order 12958, as amended by Executive Order 13292.[1]

Accordingly, plaintiff has no right to publish the redacted text, his First Amendment rights have

not been violated, and the Court should enter summary judgment for the CIA.

In opposition, plaintiff has mustered no credible arguments.  Plaintiff purports to challenge

the good faith of the CIA's classification decisions, but plaintiff's baseless argument is

unsupported even by his own declaration.  His discovery request is also unsupported, and, as a

proposed "fishing expedition" based solely on speculation, does not meet the standard under Fed.

R. Civ. P. 56(f).  Similarly, plaintiff claims estoppel against the government although he has not

established any of the necessary elements of that doctrine.  Finally, under settled precedent the

Court should reject plaintiff's request that it unnecessarily reach a constitutional question and then

decide, also contrary to settled precedent, that the Executive must disclose classified information

to private counsel in a civil suit.  Simply put, the CIA is not required to release classified material

in order to protect against disclosure of that very information.

The Court should conclude, based on its review of the CIA's unclassified and classified

declarations submitted in support of its classification determinations and with appropriate

deference, that the government's classification decisions were proper.  For these reasons, and as

set forth more fully below and in defendant's earlier memorandum, this Court should grant

Defendant's Motion for Summary Judgment.

---

[1]     Executive Order 12958, 60 Fed. Reg. 19825 (April 17, 1995), was amended by Executive Order 13292 in March, 2003.  See Executive Order No. 13292, 68 Fed. Reg. 15315 (March 25, 2003).  All citations in this memorandum to Executive Order No. 12958 are to the Order as amended by Executive Order No. 13292.  See Executive Order No. 12958, 3 C.F.R. 333 (1995), reprinted as amended in 50 U.S.C.A. § 435 Note (Supp. 2006) at 180.

**ARGUMENT**

**I.    Standard of Review: The CIA's Classification Decisions Are Entitled to Utmost Deference**

As the CIA explained in its first memorandum in support of summary judgment, see Def. Mem. 5-6, 9-14, "'the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects might occur as a result of [the disclosure of] a particular classified record.'" McGehee v. CIA, 718 F.2d 1137, 1148 (D.C. Cir. 1983) (quoting S. Conf. Rep. No. 93-1200, at 12 (1974)); accord Ctr. for Nat'l Sec. Studies v. DOJ, 331 F.3d 918, 927 (D.C. Cir. 2003). Accordingly, "in reviewing whether specified information reasonably could be expected to cause actual serious harm if divulged, courts should accord deference to the CIA's reasoned explanation of its classification decision." McGehee, 718 F.2d at 1140. Because the judiciary "cannot second-guess CIA judgments on matters in which [it] lacks the requisite expertise," all that is required is that the CIA provide explanations to the court demonstrating with "reasonable specificity" a "logical connection between the deleted information and the reasons for classification." Id. at 1148. To evaluate plaintiff's claim, the Court of Appeals has directed this Court to consider in camera and ex parte the CIA's classified submission along with the publicly filed documents. Stillman v. CIA, 319 F.3d 546, 548-9 (D.C. Cir. 2003) ("in camera review of affidavits, followed [only] if necessary by further judicial inquiry, will be the norm") (quoting McGehee v. Casey, 718 F.2d 1137, 1149 (D.C. Cir. 1983)); see also Lee v. CIA, Civ. No. 03-206-TPJ, Slip Op. at 2 (D.D.C. July 7, 2004) (following Stillman and McGehee; stating "the Court finds that it can resolve the classification issue ex parte, without any further aid from plaintiff's counsel").

Plaintiff does not seriously dispute that the CIA's classification decisions are due "utmost deference," see Taylor v. Department of the Army, 684 F.2d 99, 109 (D.C. Cir. 1982) (quoting Halkin v. Helms, 598 F.2d 1, 9 (D.C. Cir. 1978)), and subject to review as set forth above.   Yet plaintiff dismisses defendant's citations to controlling Circuit authority as "generic references asserting that this Court lacks the knowledge to substantively assess its classification decisions." Pl. Mem. 10 n.7.  Plaintiff's dissatisfaction notwithstanding, the controlling Circuit precedent cited by defendant provides the framework and deferential standard for this Court's consideration of his claim.  See Def. Mem. 9-14.[2]

The declarations of Marilyn A. Dorn ("Class. Decl." and "Unclass. Decl."), a CIA classification expert and an original classification authority under E.O. 12958, amply satisfy the requirement that they offer with "reasonable specificity" a "logical connection between the deleted information and the reasons for classification"  by providing detailed explanations of why the information at issue is properly classified.  See McGehee, 718 F.2d at 1148; see also id. at 1149 ("courts must assure themselves that the reasons for classification are rational and plausible ones.").

---

[2]       Plaintiff appears to argue this Court should not defer to the Executive's classification decisions because the judge presiding in this case "also happens to currently chair the Foreign Intelligence Surveillance Court[.]" Pl. Mem. 10 n.7.  While the Court is no doubt well aware of the nature and extent of its experience, it does not alter the standard of review.  The judiciary's deference to the Executive's classification decisions "simply recognize[s] the different roles underlying the constitutional separation of powers. It is within the role of the executive to acquire and exercise the expertise of protecting national security. It is not within the role of the courts to second-guess executive judgments made in furtherance of that branch's proper role." Center for Nat'l Sec. Studies, 331 F.3d at 932 (quoted in Def. Mem. at 14).

**II.     Plaintiff's Allegations of Bad Faith by the CIA and Request for Discovery Are Baseless**

      **A.     There Is No Basis for the Court to Look Behind the CIA's Declarations, Which Establish the Redacted Portions of Plaintiff's Manuscript Are Properly Classified**

Contrary to the teachings of the D.C. Circuit and other courts, plaintiff invites this Court to inappropriately "second-guess" the CIA's classification decisions, as embodied in the Classified and Unclassified Dorn Declarations, based on the baseless claim that "the CIA has acted in bad faith." Pl. Mem. 14. The Court should not credit plaintiff's conclusory effort to undermine a public official who has submitted a sworn declaration in her official capacity.

Where, as here, the CIA's declarations contain "reasonable specificity demonstrating a logical connection between the deleted information and the reasons for classification," the judiciary "cannot second-guess CIA judgments" with respect to classification decisions. McGehee, 718 F.2d at 1148-49. As discussed below, plaintiff "does not succeed in raising such questions about the bona fides or diligence of the agenc[y] as to override the weight we must give to [its] classification determinations." Afshar v Dep't of State, 702 F.2d 1125, 1131 (D.C. Cir. 1983). Once the Court "has determined that the classified . . . declaration adequately justif[ies] the withholding of classified information," "there is no basis for the Court to examine [the] agency's reasons or motives for classifying information." Edmonds v. FBI, No. Civ. A. 02-1294, 2003 WL 21710498, *15 (D.D.C. July 23, 2003). See also Edmonds v. FBI, 272 F. Supp. 2d 35, 58 (D.D.C. 2003) (same). Ms. Dorn, an original classification authority under Executive Order 12958 (Unclass. Decl. ¶ 4), has found pursuant to that Executive Order that the text redacted from plaintiff's manuscript is properly classified. Unclass. Decl. ¶¶ 6, 8, 41-48; Class. Decl.

¶¶ 44-72.  Thus, plaintiff "simply has no first amendment right to publish it."  Stillman, 319 F.3d at 548; see also Snepp v. United States, 444 U.S. 507, 510 n.3 (1980) (per curiam).

Even if it was appropriate for the Court to reach plaintiff's efforts to question Ms. Dorn's good faith, the Court should reject them because plaintiff has offered nothing beyond conclusory statements and rank speculation.  Even those are contained only in plaintiff's own declaration,[3] in which he reports that the then-Executive Director of the CIA, Kyle "Dusty" Foggo, dined with plaintiff and a third party in order to persuade plaintiff not to leave the CIA.  Declaration of Gary Bernsten [sic] ("Berntsen Decl."), Exhibit 3 to Pl. Mem., ¶ 8.  According to plaintiff, "Mr. Foggo stated that [then CIA] Director [Porter] Goss wanted no more books published by current or former CIA officials.  Mr. Foggo stated 'we will have no more books.  I will redact the shit out of your book so no one will want to read it.'"  Id. ¶¶ 8-9.  These purported recollections are insufficient to discredit the reasonable and detailed conclusions of Ms. Dorn.  As an initial matter, and as described above, the Court's in camera review of Ms. Dorn's declarations will establish that they demonstrate with specificity the logical connection between the deleted information and the reasons for classification, and her determination is based solely on the criteria of the governing executive order.  See McGehee, 718 F.2d at 1148, 1149.  Under the law, that is all that is required of the CIA to show its classification is proper; the claims of plaintiff's declaration are therefore not material.  See Afshar, 702 F.2d at 1131; Edmonds, No. Civ. A. 02-1294, 2003 WL 21710498, *15.  Plaintiff's allegations certainly do not create a dispute of material fact.

---

[3]     Plaintiff's declaration (throughout which, including beneath the signature line, his name is misspelled) does not appear to be properly before this Court.  The document bears no copy of an original signature pursuant to 28 U.S.C. § 1746 and LCvR 11.2, and any electronic signature is that of plaintiff's counsel, not plaintiff, pursuant to LCvR 5.4(b)(4) ("use of a CM/ECF password to login and submit documents creates an electronic record that operates and serves as the signature of *the person to whom the password is assigned*" (emphasis added)).

It is well established that "a mere assertion of bad faith is not sufficient to overcome a motion for summary judgment" based on an agency's reasoned explanation of the grounds for its classification decisions.  Assassination Archives & Research Center v. CIA, 177 F. Supp. 2d 1, 8 (D.D.C. 2001), aff'd 334 F.3d 55 (D.C. Cir. 2003).  "The sufficiency of affidavits is not undermined by a mere allegation of agency misrepresentation or bad faith . . . ."  Hayden, 608 F.2d at 1387; see also Billington v. DOJ, 11 F. Supp. 2d 45, 57-58 (D.D.C. 1998) (plaintiff's conclusory allegation that agency was attempting to protect information in order to avoid embarrassment did not raise "a triable issue or . . . call for further inquiry" as to the reasonableness of an agency's judgment that withheld information was classified) (quoting Gardels, 689 F.2d at 1106), aff'd in part, vacated on other grounds, 233 F.3d 581 (D.C. Cir. 2000).  Cf. FTC v. Invention Submission Corp., 965 F.2d 1086, 1091 (D.C. Cir. 1992) ("As we have so often said, 'agencies are entitled to a presumption of administrative regularity and good faith'." (citations omitted)), cert. denied, 507 U.S. 910 (1993).

For that matter, even if accepted at face value, the statements that plaintiff attributes to Mr. Foggo do not indicate any inappropriate actions by Mr. Foggo or anyone else with respect to plaintiff's writings.  By plaintiff's account, his discussion with Mr. Foggo apparently took place in the spring of 2005 before plaintiff had submitted his manuscript, so it could not have reflected any actions taken in review of that manuscript.  Moreover, the out-of-context quotes may have reflected a reasonable conclusion by Mr. Foggo that any "book on the Afghan War," Berntsen Decl. ¶ 8, by plaintiff would contain a great deal of information that would be properly classified and subject to redaction under Berntsen's secrecy agreement.[4]

------

[4]    The Court also need not accord great weight to a plaintiff's self-serving

(continued...)

**B.    The Court Should Deny Plaintiff's Unfounded Rule 56(f) Discovery Request**

Plaintiff requests the opportunity to take certain discovery pursuant to Fed. R. Civ. P. 56(f). Plaintiff's request runs contrary to (and seeks a back door around) the D.C. Circuit's holding in <u>Stillman v. CIA</u>, 319 F.3d at 548-9, that this Court should first seek to resolve this case based on the government's <u>ex parte</u> and <u>in camera</u> submission, without the aid of plaintiff's counsel. <u>See infra</u> Part IV. In any event, plaintiff's request fails under the applicable standard.

Under Rule 56(f), a court may "order a continuance to permit discovery if the party opposing the [summary judgment] motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." <u>Strang v. United States Arms Control & Disarmament Agency</u>, 864 F.2d 859, 861 (D.C. Cir. 1989). Rule 56(f) is not a license for endless discovery or discovery into any matter that fits within the broad definition of relevance, but a tool to enable specific discovery requests in limited circumstances. Thus, the "party seeking additional discovery bears the burden of identifying the facts to be discovered that would create a triable issue and the reasons why the party cannot produce those facts in opposition to the motion." <u>Globalaw Ltd. v. Carmon & Carmon Law Office</u>, --- F. Supp.2d ----, No. Civ. A 03-950 CKK, 2006 WL 2598212, *16 (D.D.C. September 11, 2006) (Kollar-Kotelly, J.), citing <u>Byrd v. EPA</u>, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999). "It must also show a reasonable basis to suggest that discovery might reveal triable issues of fact." <u>Id.</u>, citing <u>Carpenter v. Fed. Nat'l</u>

---

[4](...continued)

declaration, which is unsupported by any other evidence. <u>See</u>, <u>e.g.</u>, <u>Morgan v. Federal Home Loan Mortgage Corp.</u>, 172 F. Supp. 2d 98, 104-5 (D.D.C. 2001) (finding plaintiff's "Statement of Genuine Issues in Dispute" to be "woefully deficient in many respects" where, <u>inter alia</u>, "in support of his Statement, plaintiff often relies on his own self-serving Declaration, much of which is peppered with conclusory statements . . ."); <u>cf.</u> <u>Gleklen v. Democratic Cong. Campaign Committee, Inc.</u>, 199 F.3d 1365, 1369 (D.C. Cir. 2000) ("plaintiff's evidence about the conversation is sheer hearsay; . . . [i]t therefore counts for nothing").

Mortgage Ass'n, 174 F.3d 231, 237 (D.C. Cir. 1999).  These standards are "designed to prevent fishing expeditions by narrowing the scope of discovery."  Hotel & Restaurant Employees Union, Local 25 v. Attorney General, 804 F.2d 1256, 1269 (D.C. Cir. 1986).  See also Economou v. Butz, 466 F.Supp. 1351, 1357 (S.D.N.Y. 1979) ("a vague hope that contradictory evidence will subsequently be discovered is insufficient to defeat a motion for summary judgment") (quotation marks omitted).  Plaintiff has fallen far short of his burden to justify the Rule 56(f) discovery he seeks.

A party seeking to invoke Rule 56(f) cannot rely only on "speculative issues of fact," but must show that the necessary facts exist.  Exxon Corp v. FTC, 663 F.2d 120, 128 (D.C. Cir. 1980).  As discussed supra, nothing about plaintiff's purported conversation with then-CIA Executive Director Foggo calls into question the veracity or conclusions of Ms. Dorn, an original classification authority pursuant to Executive Order 12958, that the redacted portions of plaintiff's manuscript would are properly classified under that Executive Order.  In his Rule 56(f) declaration, plaintiff's counsel Mr. Zaid states that

> the PRB, after its review of Bernsten's [sic] book, only sought to redact a total of five pages of information. Yet after the manuscript was sent to the CIA's Directorate of Operations, which was under Mr. Foggo's direct control, all of a sudden approximately seventy pages were designated as classified. Bernsten [sic] should be permitted to explore through discovery the extent to which, if any, Mr. Foggo had on his review process before the Court considers granting the CIA's Motion.

Rule 56(f) Declaration of Mark S. Zaid, Esq., ¶ 21.  A request to discover "the extent to which, if any" (id. (emphasis added) something may have occurred is plainly insufficient to invoke Rule 56(f).  See Exxon Corp., 663 F.2d at 128; Richardson v. Nat'l Rifle Ass'n, 871 F. Supp. 499, 502 (D.D.C. 1994) (to invoke Rule 56(f), it is insufficient to "simply assert that 'certain information' and 'other evidence' may exist and may be obtained through discovery." (citation omitted)).  By

the same token, plaintiff has proffered nothing to show that "the PRB . . . only sought to redact a total of five pages of information," see Zaid Decl. ¶ 20, see also Berntsen Decl. ¶ 12,[5] beyond his conclusory statements.[6]  These are, again, insufficient to justify discovery.  See Messina v. Krakower, 439 F.3d 755, 762-63 (D.C. Cir. 2006) (upholding denial of Rule 56(f) request where "the requesting party has offered only a 'conclusory assertion without any supporting facts' to justify the proposition that the discovery sought will produce the evidence required" (quoting Byrd, 174 F.3d at 248 n. 8), and where the party's brief and Rule 56(f) affidavit "contain[ed] no support for the proposition that discovery would have produced the evidence she anticipated");

---

[5]        Defendant has not seen Exhibit 2 to Pl. Mem., plaintiff's classified submission to the Court, because it is the subject of plaintiff's pending motion for that document to be considered ex parte.  See Pl. Mot. for Ex Parte Review of Document (Docket Entry No. 30). Because the text of that motion is also largely contained in his summary judgment opposition, defendant incorporates by reference herein its opposition to plaintiff's motion for ex parte review (Docket Entry No. 32).  In the CIA's opposition, it asked this Court to either disregard plaintiff's submission or permit defendant to see and respond to it within 30 days of the Court's ruling. Accordingly, pursuant to such an Order of the Court defendant will supplement this memorandum as appropriate to rebut any pertinent arguments or assertions in plaintiff's submission.

In any event, as to plaintiff's (apparently unsupported) assertion that "the PRB" informed him it would only redact five pages of his manuscript, defendant assumes plaintiff is claiming there was an oral representation to that effect since he has presented no documentary evidence.  Such an oral representation cannot have been a final decision by the PRB, because a final decision would be in writing; indeed, the secrecy agreement between plaintiff and defendant requires a final written determination.  See Secrecy Agreement between Gary Berntsen and the CIA dated October 6, 1982, attached to Unclass. Dorn Decl. as Exh. A ("Pl. Secrecy Agreement"), ¶ 5.  It is possible, of course, that at some time *prior to conclusion of the classification review of plaintiff's manuscript* that a PRB representative told Berntsen it had already found, at that preliminary point, five pages that were clearly classified.  That does not alter the CIA's final classification determination, which is described and embodied in Ms. Dorn's classified declaration.

[6]        In his memorandum, plaintiff later asserts that "[t]he PRB explicitly shared . . . with Bernsten [sic]" the "fact that the PRB's review of the Jawbreaker manuscript resulted in only five total pages of redactions."  Pl. Mem. 22.  In support, plaintiff cites only his own declaration, but that is not even what his declaration says. In his declaration, plaintiff merely asserts, without any foundation, that "the PRB only believed that about five pages in total needed to be redacted."  See Berntsen Decl. ¶ 12.  Such a baseless claim can neither defeat summary judgment nor justify Rule 56(f) discovery.  See also n.5, supra.

cf. TOMAC v. Norton, 193 F. Supp. 2d 182, 195 (D.D.C. 2002) (in an Administrative Procedure Act case, "Plaintiff's assertions of bad faith in the initial decisionmaking process and the conduct of litigation do not constitute a 'strong showing' sufficient to overcome the presumption of administrative regularity and good faith and to justify extra-record review and discovery.").

Plaintiff's counsel goes on to suggest the Court should "allow the deposition of the current and previous PRB Chairmen . . ., both of whom actually worked on or had familiarity with the manuscript review of Bernsten's book." Zaid Decl. ¶ 21. Plaintiff's counsel does not provide any explanation as to what evidence such depositions will uncover, what evidence supports the likelihood of the depositions uncovering that evidence, or how it would create a triable issue of fact. Thus, plaintiff does not even attempt to establish this would be anything other than the sort of "fishing expedition" that Rule 56(f) prohibits. See Hotel & Restaurant Employees Union, Local 25, 804 F.2d at 1269; Globalaw Ltd., --- F. Supp.2d ----, 2006 WL 2598212, *16. Rather, counsel appears to question the reliability of Ms. Dorn, again without any basis.[7] This, again, does not meet his burden under Rule 56(f). See Carpenter, 174 F.3d at 237 ("desire to 'test' affiants' testimony does not justify Rule 56(f) discovery" (in a parenthetical, quoting and construing Strang, 864 F.2d at 861)). Finally, plaintiff's counsel notes that his client asserts another former CIA employee was authorized to disclose the "same information [that] has been

---

[7]    Counsel wrongly asserts that "Nowhere within the CIA's PRB regulations is there a reference to Ms. Dorn's position." Zaid Decl. ¶ 21. In fact, the CIA's internal regulation "Agency Prepublication Review of Certain Material Prepared for Public Dissemination," filed herewith as Exhibit 1, does reference as one of the Board's members a "senior representative[]" of "the Directorate of Operations (DO)," which has been supplanted by the National Clandestine Service ("NCS"). See Exhibit 1at 3, ¶ 2(c)(1). See also Unclass. Dorn Decl. ¶¶ 3-4 (Ms. Dorn is "a senior CIA official" who, as NCS Information Review Officer, is "responsible for the review of documents . . . implicating NCS interests.").
    We also note that the July 2005 version of the CIA's internal regulation, filed herewith, governed the October 2005 final decision that plaintiff challenges in this case.

redacted from Bernsten's book[,]" and that former Director of Central Intelligence George Tenet revealed to other authors information that has been redacted from plaintiff's manuscript. Zaid Decl. ¶ 22. Plaintiff again proffers no evidence in support of these bald assertions so they, too, fall short of his Rule 56(f) burden. Moreover, as the CIA established in its earlier memorandum in support of summary judgment and in the Ms. Dorn's classified declaration, and discusses further below, there can be no such evidence because none of the information redacted from plaintiff's manuscript has, in fact, been officially released into the public domain as a matter of fact and law. See Def. Mem. 23-32.

Plaintiff has failed to justify Rule 56(f) discovery; the Court should, accordingly, reject his Rule 56(f) request.[8]

## III.    The Redacted Portions of Plaintiff's Manuscript Are Not in the Public Domain

As defendant has explained, the material redacted from plaintiff's manuscript is properly classified pursuant to the governing Executive Order, and none of it has been declassified or placed in the public domain through "an official and documented disclosure." See Fitzgibbon,

---

[8]    Plaintiff's discovery would be sharply limited in any event since classified materials are simply not subject to discovery under well-settled case law. See National Council of Resistance of Iran v. Dep't of State, 251 F.3d 192, 208-09 (D.C. Cir. 2001) (in a case concerning designation of a terrorist organization under a statute, observing that the government did not need to "disclose the classified information to be presented in camera and ex parte to the court under the statute. This is within the privilege and prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect."); Kasza v. Browner, 133 F.3d 1159, 1165 (9th Cir. 1998) (refusing to require production of classified materials where "there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged") (internal quotation marks omitted); In re United States, 872 F.2d 472, 474-77 (D.C. Cir. 1989); American Civil Liberties Union v. Brown, 619 F.2d 1170, 1172-73 (7th Cir. 1980); cf. United States v. Reynolds, 345 U.S. 1, 6 (1953) (recognizing state secrets privilege).

911 F.2d at 765 (citing Afshar, 702 F.2d at 1133); see also Unclass. Decl. ¶ 72; Def. Mem. 23-32; cf. Unclass. Decl. ¶¶ 73-79, Class. Decl. ¶¶ 110-125.

Plaintiff, arguing the redacted portions of his manuscript are not properly classified because they are in the public domain, does not take issue with the governing legal framework. Pl. Mem. 17. To be considered in the public domain, (1) the information at issue must be *as specific* as the information that has been publicly disclosed; (2) the disputed information must *exactly match* the information publicly disclosed; and (3) the information sought to be released must already have been publicly released through an official and documented disclosure. See Assassination Archives and Research Center v. CIA, 334 F.3d 55, 60 & n.4 (D.C. Cir. 2003); Public Citizen v. Dep't of State, 11 F.3d 198, 201-2 (D.C. Cir. 1993) (also cataloging cases and describing "stringency" of the test for release into the public domain). Plaintiff argues that the redacted portions of his manuscript have been subject to "official and documented disclosure" because, apparently, he asserts information as specific as, and exactly matching, his text has previously been published by other CIA authors with PRB approval.

As the CIA has established, plaintiff's factual assertion is incorrect. Unclass. Decl. ¶¶ 73-79, Class. Decl. ¶¶ 110-125. Regardless, plaintiff's legal argument is directly contradicted by controlling D.C. Circuit authority. A book published by a former CIA employee such as plaintiff in his personal capacity is *not* an "official and documented disclosure" as a matter of law; therefore, it does not place information in the public domain. See Afshar, 702 F.2d at 1133-34. As the Court of Appeals recognized, that is for good reason: such "books, frequently written in the first person, are received as the private product of their authors, like any other memoirs, and are accorded such respect as their content seems to deserve." Id. The Executive is, accordingly, entitled to conclude that publication of information – even information that had already appeared

in a nonofficial publication some time earlier – may cause harm in today's climate.  See Center for

Nat'l Sec. Studies, 331 F.3d at 928 (deferring to agency's classification decision due to, inter alia,

the fact that "America faces an enemy just as real as its former Cold War foes, with capabilities

beyond the capacity of the judiciary to explore."); Schlesinger v. CIA, 591 F. Supp. 60, 68

(D.D.C. 1984) ("Conditions in Central America are extremely sensitive *today*, and any

information about *past* covert activity by the United States in this area could have harmful effects

of precisely the sort enumerated in" the government's affidavit (emphasis added).).

     Plaintiff argues the binding Circuit precedent described above is an outdated "farce."  Pl.

Mem. 18.  Unsurprisingly, however, plaintiff's contrary argument runs four pages but cites no

conflicting authority from the D.C. Circuit or any court.  That argument fails as a matter of law:

personal capacity publications such as his do not constitute an "official and documented

disclosure."  See Public Citizen, 11 F.3d at 201-2 ("Afshar squarely rejected the argument that

statements in books written by former C.I.A. agents could be considered *official* disclosures that

had placed information in the public domain." (emphasis original)); Afshar, 702 F.2d at 1133-34;

Phillippi v. CIA, 655 F.2d 1325, 1330-31 (D.C. Cir. 1981).  And, as noted above and in Ms.

Dorn's declarations, plaintiff's argument also fails as a factual matter.[9]

---

     [9]     Plaintiff also appears to argue that books by journalists had placed some of the
very same information redacted from his manuscript in the public domain.  Pl. Mem. 22-3.  As the
CIA has explained, reports by journalists do not place classified information into the public
domain.  See Def. Mem. 28-31.  Plaintiff seems to claim that the President, Vice President and a
former Director of Central Intelligence also placed into the public domain precisely the same
information as the CIA has redacted from plaintiff's manuscript.  Pl. Mem. 22-3.  Since plaintiff
provides no evidence in support of this assertion, he has not met his burden to establish any such
disclosure was official and documented.  See Phillippi, 655 F.2d at 1330-31 (despite disclosure of
information in memoir by former CIA Director, "the 'cat is not out of the bag.'  There may be
much left to hide, and if there is not, that itself may be worth hiding." (internal citation omitted));
see also Peterzell v. C.I.A., Civ. No. 85-2685, 1986 WL 15352 (D.D.C. July 11, 1986)
                                                                         (continued...)

III.    **The Government Is Not Equitably Estopped From Redacting the Classified Portions of Plaintiff's Manuscript**

The doctrine of estoppel is inapplicable against the government in any case involving "payment from the Treasury." OPM v. Richmond, 496 U.S. 414, 434 (1990). Although the Supreme Court has refrained to date from "adopt[ing] a 'flat rule that estoppel may not in any circumstances run against the Government,'" it has held that "the arguments the Government advances for the rule are substantial.'" Id. at 423 (quoting Heckler v. Community Health Services, 467 U.S. 51, 60 (1984)). Because of the "powerful cautions against application of the doctrine to the government" that thus exist, any application of the doctrine to the government must, at the very least, "'be rigid and sparing.'" Rann v. Chao, 346 F.3d 192, 197 (D.C. Cir. 2003) (quoting ATC Petroleum v. Sanders, 860 F.2d 1104, 1111 (D.C. Cir. 1988)).

In this case, plaintiff asserts he "relied upon the assurances provided to other authors, most notably Gary Schroen . . . that the information contained in previously approved manuscripts contained unclassified information." Pl. Mem. 23. Therefore, plaintiff argues the CIA is estopped from redacting the information in question from his own manuscript. These allegations are

---

[9](...continued)
("Plaintiffs claim that the information requested has been publically acknowledged by the Executive Branch, the Congress, and the media. Essentially, plaintiffs have fashioned a mosaic of news stories, Congressional reports, and remarks by the President, Vice President, and the Director of the CIA and claim that from this creation the Court can gleam an 'official acknowledgment' of the covert paramilitary operations in Nicaragua. This simply is not so. Plaintiffs' artful construction is not tantamount to an 'official acknowledgment' of the alleged covert operations. . . . At best, plaintiffs have referred the Court to numerous unofficial or unauthorized disclosures of the alleged covert activities."). In any event, because this argument is apparently discussed further in the in camera submission by plaintiff that defendant has yet to see due to plaintiff's privilege claim, we again respectfully ask for the opportunity to rebut that submission appropriately after the Court has resolved plaintiff's Motion for Ex Parte Review of Document.

without merit even assuming, *arguendo*, that a claim of estoppel can ever be sustained against the government.

As the D.C. Circuit has held,

Even in circumstances where the doctrine of estoppel is applicable, the following elements, at least, must be established: that there was a "definite" representation to the party claiming estoppel; that the latter "relied on its adversary's conduct in such a manner as to change his position for the worse"; and that the reliance was "reasonable."

Graham v. SEC, 222 F.3d 994, 1007 (D.C. Cir. 2000) (quoting Heckler, 467 U.S. at 59). Plaintiff has not established *any* of these minimally required elements.

First, plaintiff argues for estoppel not based on anything he alleges was said to *him* – that is, "the party claiming estoppel" – but based on "assurances provided to other authors," Pl. Mem. 24, and, apparently, on disclosures "condoned by the highest level officials of the United States Government," id. 25. Simply put, neither is a "'definite' representation to the party claiming estoppel." See Graham, 222 F.3d at 1007.

Even if plaintiff was claiming estoppel based on a representation made to him, he has neither alleged nor established that or how he relied on that representation to his detriment. See id.

And, even if plaintiff had relied to his detriment on a representation made to him, he certainly cannot establish that it was a reasonable reliance. Plaintiff has provided no evidence of any such representation made in writing, but the secrecy agreement he knowingly and voluntarily entered as a condition of being placed in a position of special trust by the United States clearly provides he may "not take any steps toward public disclosure" of information that may be subject to his agreement "until [he has] received *written permission to do so* from the Central Intelligence

Agency." Pl. Secrecy Agreement ¶ 5 (emphasis added).[10]  Thus, plaintiff cannot reasonably have

relied on any authorization to publish other than written permission from the CIA to him; this is

further evidence he did not rely to his detriment, since he was prohibited by contract from taking

"any steps toward public disclosure" of his manuscript until he received that written permission.

Id.

       Plaintiff's claim of estoppel borders on the frivolous, and the Court should reject it.[11]

## IV.    This Court Should Not Order Disclosure of Classified Information to Plaintiff's Counsel

       Three years ago, the D.C. Circuit considered a similar challenge to the government's

prepublication classification decisions, reversed the district court for following the procedure that

plaintiff now urges here, and instructed this Court how to proceed.  In particular, this Court

> should first inspect the manuscript and consider any pleadings and declarations filed by the
> Government . . . .  The court should then determine whether it can, consistent with the
> protection of [plaintiff]'s first amendment rights to speak and to publish, and with the
> appropriate degree of deference owed to the Executive Branch concerning classification
> decisions, resolve the classification issue without the assistance of plaintiff's counsel.  If
> not, then the court should consider whether its need for such assistance outweighs the
> concomitant intrusion upon the Government's interest in national security.

---

      [10]    Plaintiff claims that "in this case . . . Bernsten [*sic*] adhered to his secrecy agreement. . . . The CIA does not assert otherwise."  Plaintiff is mistaken; as the CIA has asserted, he has not complied with certain provisions of his secrecy agreement.  See, e.g., Unclass. Dorn. Decl. ¶ 27.

      [11]    Even if plaintiff had established all of the traditional elements of estoppel, rather than none of them, it would still not be appropriate to enforce that equitable doctrine against the government here.  "The case for estoppel against the government" requires proof of the traditional elements as well as "a showing of . . . [the] lack of undue damage to the public interest." ATC Petroleum, Inc., 860 F.2d at 1111 (quoting Int'l Org. of Masters, Mates & Pilots v. Brown, 698 F.2d 536, 551 (D.C. Cir. 1983) (internal quotation marks omitted)).  Thus, equitable estoppel cannot be appropriate where, as here, it would lead to a disclosure that would cause serious damage to the national security.  See Haig v. Agee, 453 U.S. 280, 307 (1981) ("no governmental interest is more compelling than the security of the nation").

Stillman, 319 F.3d at 548-9.[12]  The CIA's submissions, viewed with the appropriate degree of

deference, establish that the redacted portions of plaintiff's manuscript are properly classified and,

therefore, plaintiff has no First Amendment or other right to publish them.[13]  Therefore, the Court

does not require the assistance of plaintiff's counsel, and it need not "consider whether its need

for such assistance outweighs the concomitant intrusion" on the Executive's supremely

compelling interest in national security.  Id.

        Plaintiff, however, asks this Court to order the CIA to disclose classified information to

his counsel in this civil case, arguing the underlying "Constitutional question needs to be formally

decided[.]"  See Pl. Mem. 30.  Plaintiff is mistaken; the core holding of Stillman is that the

constitutional question does *not* need to be formally decided where, as here, the Court can

dispose of the case based on the government's ex parte, in camera submission.  Indeed, to reach

"unnecessarily the constitutional question whether Stillman has a right under the First Amendment

for his attorney to be given access to the manuscript" would be an abuse of this Court's

discretion, as it was for the district court in Stillman.  319 F.3d at 547.

---

        [12]    The Court of Appeals in Stillman also instructed the district court to consider "any
materials filed by Stillman. . . ."  319 F.3d at 548-9.  While defendant does not object to the Court
considering factual arguments made by plaintiff, any arguments plaintiff makes concerning his
substantive disagreements with the CIA's classification decisions are due no weight by this Court.
This is not, as plaintiff asserts, a mere "self-serving and belittling comment," Pl. Mem. 9 n.6, but
an accurate reflection of controlling authority.  See, e.g., Snepp, 444 U.S. at 512 ("When a
former agent relies on his own judgment about what information is detrimental, he may reveal
information that CIA–with its broader understanding . . . could have identified as harmful.");
Gardels, 689 F.2d at 1106 & n.5 (former agent's "own views as to the lack of harm which would
follow the disclosure requested by plaintiff" is insufficient to justify further inquiry beyond the
Agency's "plausible and reasonable" informed position).

        [13]    If this Court determines it is not satisfied with the CIA's explanation of any of its
classification decisions on the current record, it should seek further clarification from the
government.  Cf. Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).

Even if this Court were to reach the question, it should reject plaintiff's argument.  "It is one of the unfortunate features of this area of the law that open discussion of how the general principles apply to particular facts is" not merely disfavored, but "impossible."  Ellsberg v. Mitchell, 709 F.2d 51, 59 n.41 (D.C. Cir. 1983).  Thus, where a plaintiff's interest in litigating a claim is pitted against the government's interest in protecting sensitive information affecting national security, "the Constitution compels the subordination of [the litigant's] interest in the pursuit of [his or her] claims to the executive's duty to preserve our national security."  Halkin v. Helms, 690 F.2d 977, 1001 (D.C. Cir. 1982).

As a threshold matter, under the separation of powers established by the Constitution, the Executive Branch is responsible for the protection and control of national security information.  See Dep't of the Navy v. Egan, 484 U.S. 518, 527 (1988) (noting that the Executive's authority to classify information arises from the President's role as Commander in Chief under Art. II, § 2 of Constitution).  The Constitution's separation of powers among the three branches is violated "where one branch invades the territory of another," New York v. United States, 505 U.S. 144, 182 (1992), and plaintiff's motion seeks an order that, if granted, would  invade the territory of the President by directly undermining his ability to carry out his core executive function of protecting national security.  See, e.g., Egan, 484 U.S. at 527; Stehney v. Perry, 101 F.3d 925, 931-32 (3d Cir. 1996) (agreeing with district court that judicial review of the merits of an Executive Branch granting or denying a security clearance would violate the separation of powers principle); Guillot v. Garrett, 970 F.2d 1320, 1324 (4th Cir. 1992) (the President has "exclusive constitutional authority over access to national security information"); Dorfmont v. Brown, 913 F.2d 1399, 1405 (9th Cir. 1990) (Kozinski, J., concurring) ("Under the Constitution, the President has unreviewable discretion over security decisions made pursuant to his powers as

chief executive and Commander-in-Chief."); id. at 1401 (opinion of the court) (no judicial review

of merits of a security clearance decision); Jamil v. Secretary, Department of Defense, 910 F.2d

1203, 1205-06 (4th Cir. 1990) (same);  Hill v. Department of Air Force, 844 F.2d 1407, 1409

(10th Cir. 1988) (same).  Cf. Ryan v. Reno, 168 F.3d 520, 524 (D.C. Cir. 1999) (no judicial

review of discrimination claims under Title VII when court cannot proceed "without reviewing

the merits of . . . decision not to grant a clearance").  In short, it is beyond the power of the courts

to second-guess the merits of an Executive Branch decision to deny someone access to classified

information.  See CIA v. Sims, 471 U.S. at 180 ("it is the responsibility of [the Executive], not

that of the judiciary, to weigh the variety of complex and subtle factors in determining whether [to

disclose sensitive information]."); Fitzgibbon v. CIA, 911 F.2d 755, 766 (D.C. Cir. 1990)

(impermissible for trial court to "perform its own calculus as to whether or not harm to the

national security . . . would result from disclosure" of national security information); In re United

States, 1 F.3d 1251 (Table), 1993 WL 262656 (Fed. Cir. 1993) ("decisions of the Executive

Branch [regarding who may have access to classified information] may not be countermanded by

either coordinate Branch" under separation of powers doctrine) (holding that the trial court

exceeded its authority in reviewing and reversing government's decision as to the number of

persons allowed access to classified information for purposes of litigation).

　　　　Plaintiff contends that the First and Fifth Amendments create a right of access to classified

information in civil litigation where such information is needed either to prove the plaintiff's

claims or to establish the government's defense.  The Supreme Court and the lower courts,

however, have made it clear that there is no constitutional right of access to national security

information in a civil case.  See Egan, 484 U.S. at 528; Doe v. Cheney, 885 F.2d 898, 909-10

(D.C. Cir. 1989) (no property interest in a security clearance); Jones v. Department of Navy, 978

F.2d 1223, 1225 (Fed. Cir. 1992) ("there is no access 'right' to classified documents"),

Dorfmont, 913 F.2d at 1403-04 (no right to a security clearance); Jamil, 910 F.2d at 1209 (same);

Hill, 844 F.2d at 1411 ("Whatever expectation an individual might have in a clearance is unilateral

at best, and thus cannot be the basis for a constitutional right").

       To the extent that the courts have recognized or assumed a constitutional right for a civil

litigant to be represented by counsel, no court has ever construed this right to encompass a right

to disclose classified information to counsel.  And for the Court to do so here would directly

infringe upon the President's constitutional right to determine who may have access to classified

information.  The D.C. Circuit has stated that, as a general matter, a civil litigant's inability to

freely confer with counsel implicates his right to "meaningful access to the courts."  Martin v.

Lauer, 686 F.2d 24, 32 (D.C. Cir. 1982).  However, the D.C. Circuit has also made it clear that

the First Amendment does not provide a litigant seeking legal advice regarding a dispute with the

government with "carte blanche authority to disclose any and all confidential government

information to the [litigant's] attorney."  Jacobs v. Schiffer, 204 F.3d 259, 265 (D.C. Cir. 2000).

Rather, the scope of the First Amendment right of "meaningful access" is determined by

"balancing the [litigant's] interests in communication with the government's interests in

preventing communication."  Id. at 265-66.  Here, where plaintiff argues an individual's right of

access to the courts is pitted against the President's constitutional duty and authority to protect

national security information, the individual right must yield to the more compelling public

interest.  See Halkin II, 690 F.2d at 1001 ("the Constitution compels the subordination of

appellants' interest in the pursuit of their claims to the executive's duty to preserve our national

security").[14]  Given that plaintiff voluntarily agreed not to disclose classified information to anyone without the prior approval of the government and to submit material for prepublication review, see Pl. Secrecy Agreement, the restriction on his ability to confer with counsel is all the more reasonable.  See United States v. Aguilar, 515 U.S. 593, 606 (1995) ("As to one who voluntarily assumed a duty of confidentiality, governmental restrictions on disclosure are not subject to the same stringent standards that would apply to efforts to impose restrictions on unwilling members of the public.").

---

[14]    It is well settled that disclosure of classified information to private counsel poses security risks.  See, e.g., Colby v. Halperin, 656 F.2d 70, 72 (4th Cir. 1981)("[d]isclosure to one more person, particularly one found by the CIA to be a person of discretion and reliability, may seem of no great moment, but information may be compromised inadvertently as well as deliberately."); Alfred A. Knopf, Inc. v. Colby, 509 F.2d 1362, 1369 (4th Cir. 1975) ("It is not to slight judges, lawyers, or anyone else to suggest that any such disclosure carries with it the serious risk that highly sensitive information may be compromised.").

## CONCLUSION

For all the foregoing reasons, as well as those set forth in defendant's first Memorandum in Support of Defendant's Motion for Summary Judgment, the Court should grant the CIA's Motion and enter judgment in its favor.

Dated: November 6, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Director, Federal Programs Branch

          /s/ Steven Y. Bressler
STEVEN Y. BRESSLER D.C. Bar #482492
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, DC  20044
Tel. No.:  (202) 514-4781
Fax No.:  (202) 318-7609
Steven.Bressler@usdoj.gov

Counsel for Defendant