# EXHIBIT "6"

Rule 56(f) Declaration of
Roy w. Krieger, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY BERNSTEN                           *
                                        *
    Plaintiff,                          *
                                        *
        v.                              *      Civil Action No. 05-1482 (CKK)
                                        *
CENTRAL INTELLIGENCE AGENCY             *
                                        *
    Defendant.                          *
*   *   *   *   *   *   *   *   *   *   *   *   *

**RULE 56(f) DECLARATION OF ROY W. KRIEGER**

The undersigned hereby declares as follows:

1. I am a person over eighteen (18) years of age and competent to testify. I make this Declaration on personal knowledge. This Declaration is submitted in support of the plaintiff's Opposition to Defendant's Motion for Summary Judgment and pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

2. I am the attorney for the plaintiff Gary Bernsten ("Bernsten") in this matter. I am admitted to practice law in the District of Columbia, as well as the D.C. Circuit and Fourth Circuit Courts of Appeals, and in the United States District Court for the District of Columbia. I have been litigating cases involving the federal government for more than a decade. I routinely prosecute lawsuits asserting challenges under the Freedom of Information Act, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, and actively represent individuals associated with or within the intelligence, law enforcement or military communities. It is safe to say that I have represented more than 100 employees of the Central Intelligence Agency over the course of the last 10 years, as well as Special Agents of the Secret Service and Federal Bureau of Investigation on national security issues.

3. With respect to this case, I have not had access to either the underlying unredacted manuscript, Bernsten's substantive classification submission (discussed further below) or the CIA's "classified" declarations.

**CIA's Classification Review Process**

4. Based on the requirements imposed by a variety of secrecy agreements, current and former CIA employees, as well as contractors and private attorneys such as myself, may be required to submit certain writings to the CIA in order that a classification review may be conducted to determine whether any or all of the contents of the document are classified. In this particular case I am not subject to any such obligation as I have not executed a secrecy agreement. I hold the necessary security clearance to review the underlying

unredacted manuscript, Bernsten's substantive classification submission and the CIA's "classified" declarations. I have also executed the appropriate Security and Non-Disclosure Agreements specific to this case and these documents.

5. Bernsten was instructed by counsel to prepare a rebuttal to the CIA's classification decisions that asserted portions of his book Jawbreaker, The Attack on Bin Laden and Al-Qaeda: A Personal Account by the CIA's Key Field Commander (Crown Publishers: 2005) contained classified information. The document should include detailed specific rebuttals to the CIA's positions, and especially cite to and compare open sources, such as former CIA official Gary Schroen's book First In: An Insider's Account of How the CIA Spearheaded the War on Terror in Afghanistan (Presido Press: 2005).

6. The CIA would not permit Bernsten to provide a copy of this document to me, at least not before it underwent a classification review, on the basis that I have no "need-to-know" its contents. The CIA does not wish to allow any exchange of information between client and counsel that would assist either in challenging its determinations. In that vein it is quite noteworthy to quote the Honorable Emmet G. Sullivan's admonition to the CIA in Stillman v. DoD et al. that the manner in which it was conducting its prepublication review process "smacks of retaliation for the assertion of First Amendment rights."

7. Based on the CIA's position, it was arranged  arranged for Bernsten to submit his document to the CIA for a classification review. This would have conceivably allowed me to at least utilize and rely upon any remaining unredacted portions of the document in drafting Bernsten's opposition brief. In or about late August/early September 2006, Bernsten contacted my CIA security officer, Thomas Schmittle, and received instructions on how to submit his documentation. The CIA acknowledged receiving the document no later than September 12, 2006. On several occasions the CIA security officer was notified that we would need Bernsten's document returned to us with sufficient time to be able to draft his opposition brief.

8. On September 20, 2006, a letter was received from the Justice Department counsel currently handling this case indicating that it was "highly unlikely" we would be provided with a copy of Bernsten's document. See Exhibit "A". As of the date of this declaration, I still have not received a copy. Thus, I have little to no idea what is contained within Bernsten's submission. The letter I received also noted that the Justice Department was willing to assist in arranging for this Court's in camera review of an unredacted copy of the document as part of its deliberations.

9. This Court must assuredly review Bernsten's document in order to render a constitutionally sufficient opinion as to whether the CIA has properly classified the contents of Bernsten's book.

10. Bernsten's manuscript, as well as the most recent substantive document that he drafted at our request, were submitted to the CIA's Publication Review Board ("PRB")

for classification review. In general, the PRB arranges for submitted documents to be reviewed by relevant persons or CIA components. Although CIA regulations grant the PRB and its Chairman absolute authority to release information as unclassified, it has become clear that the PRB is not calling the shots with respect to controversial publications such as Bernsten's Jawbreaker. The PRB, both through its Chairman and other staff, routinely inform either myself or my clients, that the redactions they are being required to make are absurd. Yet the PRB nevertheless capitulates to whichever CIA component is apparently calling the shots behind the scenes.

11. This back door dealing and arm twisting became so bad that it is my understanding that the last PRB Chairman left his position because of it, and the current PRB Chairman apparently seeks to spend a great deal of time away from his office as a result as well.

## CIA Reclassification Of Information

12. On September 22, 2006, we inquired of the Director, William Leonard, Information Oversight Security Office ("ISOO"), National Archives & Records Administration, as to whether the CIA had communicated with ISOO regarding either Bernsten's or Gary Schroen's books and the classification decisions. ISOO "is responsible to the President for policy and oversight of the Government-wide security classification system and the National Industrial Security Program." It is the lead agency in the federal government that develops "security classification policies for classifying, declassifying and safeguarding national security information generated in Government and industry." See http://www.archives.gov/isoo/.

13. Mr. Leonard responded via e-mail on September 25, 2006 that he had "not received any such formal notification" from the CIA.

14. Executive Order 12958, as amended by Executive Order 13292, "prescribes a uniform system for classifying, safeguarding, and declassifying national security information, including information relating to defense against transnational terrorism." http://www.fas.org/sgp/bush/eoamend.html. Section 1.7 (c) governs the specific requirements where information may be reclassified after declassification. They include when:
(1) the reclassification action is taken under the personal authority of the agency head or deputy agency head, who determines in writing that the
reclassification of the information is necessary in the interest of the
national security;
(2) the information may be reasonably recovered; and
(3) the reclassification action is reported promptly to the Director of the Information Security Oversight Office.

15. The CIA did not abide by these requirements in reclassifying as classified any previously approved unclassified text that exists within Bernsten's manuscript.

### Discovery Is Appropriate And Necessary To Further Challenge The Bad Faith Underlying The CIA's Classification Decisions

16. In support of its position the CIA has submitted the typical public declaration from Marilyn A. Dorn, Information Review Officer, that purports to set forth the CIA's basis for declaring the redacted information within Bernsten's manuscript as classified. I, of course, have not had access to Ms. Dorn's classified declaration. The Dorn declaration, as well as other incidents noted below, justify the need to allow discovery before granting the CIA's Motion for Summary Judgment.

17. For one thing, Bernsten has submitted a sworn declaration producing prima facie evidence of bad faith on the part of the CIA with respect to its classification decisions. He stated:

8.
With all of this as background, then CIA Executive Director Kyle (Dusty) Foggo asked for me and an aide to CIA Director Goss to dine together at the Capital Grille. The purpose of the dinner was to discuss my desired retirement and persuade me not to resign. During the course of the evening I explained my reasons for wanted to depart. Mr. Foggo expressed his desire to fix the personnel system at CIA and offered to place me at a University through the officer in residence program. I explained that I had submitted an outside activity form regarding my intention to write a book on the Afghan War. Mr. Foggo stated that Director Goss wanted no more books published by current or former CIA officials.

9.
Mr. Foggo stated "we will have no more books. I will redact the shit out of your book so no one will want to read it." Upon hearing this statement I argued that multiple former Directors and hundreds of other officers had written books and that I was more than willing to follow the rules to accomplish this. In fact, I added that Gary Schroen had recently had published his book First In: An Insider's Account of How the CIA Spearheaded the War on Terror in Afghanistan (Presido Press: 2005), wherein he dedicated several chapters to me calling me "Gary 2". Mr. Foggo responded "don't bother leaving to write a book I will have it redacted until nothing is left."

18. If comments such as these, especially when coming from the third-ranking person at CIA, does not constitute possible "bad faith", then I do not know what the term could mean. In fact, the PRB, after its review of Bernsten's book, only sought to redact a total of five pages of information. Yet after the manuscript was sent to the CIA's Directorate of Operations, which was under Mr. Foggo's direct control, all of a sudden approximately seventy pages were designated as classified. Bernsten should be permitted to explore through discovery the extent to which, if any, Mr. Foggo had on his review process before the Court considers granting the CIA's Motion.

19. It would also make a great deal of sense, before summary judgment is granted, to allow the deposition of the current and previous PRB Chairmen (Richard Puhl and Paul Noel Chretien, respectively), both of whom actually worked on or had familiarity with the manuscript review of Bernsten's book. Nowhere within the CIA's PRB regulations is there a reference to Ms. Dorn's position. She is the classification litigation voice, and it is my understanding her opinion differs significantly from that of the PRB. Yet it is the PRB's Chairman whose opinion should be the most important in this process, and it is they (both the current and former Chairs) who can elaborate upon the reality, both factually and legally, of the PRB classification review process, not Ms. Dorn

20. Another legitimate avenue for discovery is the extent to which the CIA officially sanctioned the release of information to the public yet continues to declare the same information classified in Bernsten's book. Bernsten asserts that Gary Schroen intentionally revealed information to at least two authors, Bob Woodward and Steve Coll, both of whom then wrote books that discussed Afghanistan, as part of his official CIA duties, i.e., the information was declassified. Schroen then went on to include the information in his own book. George Tenet, then the Director of the CIA, also declassified relevant information as part of interviews he provided to Woodward, among others. Yet again this same information has been redacted from Bernsten's book as "classified".

21. As a result of the foregoing, pursuant to Rule 56(f), Fed.R.Civ.Proc., I am unable to prepare a complete and proper Opposition to Defendant's Motion For Summary Judgment absent further discovery and access to the classified materials described above.

I do solemnly affirm under the penalties of perjury that the contents of the foregoing Declaration are true to the best of my knowledge.

Date: January 6, 2008

Respectfully submitted,
_____/s/_____
Roy W. Krieger, Esq.

Counsel for Plaintiff Gary Bernsten